18 So.2d 873

**EARLY et al. v. STATE.**

**6 Div. 986.**

Court of Appeals of Alabama.

June 15, 1943.

Rehearing Denied June 30, 1943.

Wm. N. McQueen, Acting Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.

Pennington & Tweedy and T. K. Selman, all of Jasper, for appellant.

SIMPSON, Judge.

Elbert Early and his son, Arvle Early, appeal from a conviction of the killing of one Elzie McDaniel. Elbert Early, the father, fired the fatal shot from a shotgun, as he and his said son were travelling in an automobile being driven by Arvle Early on a public road in a mining community of Walker County.

Deceased had been in a serious and rather protracted altercation with Nath Early, another son of Elbert Early. At the time of the fatal shooting the two appellants were coming to the scene of this difficulty, presumably to aid or to rescue Nath, who was being, or had been, badly worsted in the affray by the deceased, who was considerably more of a man, physically, than Nath. As the car approached, deceased was walking down the road toward Nath, apparently to resume the fight with him. But, when he discovered the Early car approaching, with the two occupants (appellants), he stepped or "staggered" to the roadside, picked up two large rocks and

490

hurled them, or one of them, at the car. Thereupon, Elbert Early, who was on the back seat, level the gun from the window and fired the one, fatal shot which killed McDaniel. Appellants' counsel, in able argument, have presented the only propositions meriting special treatment, so discussion is limited to them.

One of the contested issues arising from the conflicting evidence was whether or not the shooting was justified upon the ground of self defense. The shooting occurred while the two defendants were in their automobile on a public road, when, according to their testimony, they were being attacked by deceased. The evidence afforded no basis for the contention that the father fired the shot at deceased in defense of his other son, Nath, for at this time it was not Nath, but the two appellants who were being assaulted and if anyone was at this time in any immediate peril it was one or the other of the appellants.

The essential elements of self defense, as established by a wealth of decisions, are so well known that repetition here seems unnecessary. West's Alabama Digest, Vol. 11, Homicide, ☜109.

█ The fatal difficulty having thus occurred at a place where all three of the elements of self defense (Jackson v. State, 77 Ala. 18, 25) must co-exist in order to justify the homicide and acquit Elbert Early of his act, the special requested charges of appellants which ignored the doctrine of retreat and omitted this requisite were incorrect statements of the applicable law and therefore correctly refused by the trial court. Notably deficient in this regard are charges numbered 3, 6, and 14, urged by appellants as proper, but the refusal of which, we think, can be thus adequately justified.

Furthermore, even if it could be said that there was some testimony affording an inference that the shooting was in defense of Nath Early—which we fail to perceive —the said charges were still subject to the same criticism (others aside), inasmuch as the evidence is in conflict as to whether or not Nath was on his own premises at the time the two appellants appeared on the scene, and when deceased was killed.

A material issue presented by the evidence was whether or not the shooting was in defense of either or both of the appellants. Tending to sustain this defense was their testimony that deceased assaulted appellants with rocks as they drove up in the car. In corroboration of this, Arvle Early testified upon direct examination that the rocks hit the top of the car and left "dents" on it. Upon cross examination, with reference to this, he was interrogated and testified as follows (rulings and exceptions are included):

" 'I know it was a rock—it left a dent.'

"Thereupon, the following proceedings were had:

"Q. (By the State Solicitor) 'Hadn't that car been turned over several times to your own knowledge?'

"Whereupon, Counsel for Defendants objected to the foregoing question propounded to the witness by the State Solicitor, on the grounds that 'It is incompetent, immaterial, irrelevant, and illegal.'

"Whereupon, the Court overruled the objection interposed by Counsel for Defendants, to which action of the Court Counsel for Defendants then and there, in open court, duly excepted.

"Witness Continued:

" 'It had been turned over one time. * * I did not see the car when it was turned over.'

"Thereupon, the following proceedings were had:

"By Counsel for Defendants: 'We move to exclude the statement; it was based on hearsay.'

"By the State Solicitor: 'I withdraw that.'

"By the Court: 'He is moving to exclude the former answer that the car was turned over.'

"By the Witness: 'No, sir.'

"By the Court (to witness): 'All you know about it is what was reported to you?'

"By the Witness: 'Yes, sir.'

"By the Court (to witness): 'Did you see the car after the report was made to you that it had been turned over?'

"By the Witness: 'Yes, sir.'

"Whereupon, the Court overruled the motion interposed by Counsel for defendants, to which action of the Court Counsel for Defendants then and there, in open court, duly excepted.

"Witness continued:

" 'It had a front fender bent up and a door handle tore off. I didn't examine it very closely.' "

It is strenuously argued by ingenious counsel that the statement that the car had been once overturned prior to the instant affair was based upon hearsay and to allow it in evidence violated the hearsay rule. It is insisted that prejudicial error intervened by the court's refusal to exclude such statement, as well as the remaining testimony hereinabove set out.

■ We perceive no error in the admission of the proof aforesaid. The contention for error overlooks the fact that whether or not the car had been previously overturned was entirely incidental and immaterial. The material inquiry here, as bearing upon the plea of self defense, was who was the aggressor, who was at fault, in provoking the difficulty. Whether there were marks or "dents" on the car as the result of the rock or rocks, which it is claimed deceased had thrown, was the pertinent question. Personal knowledge of the witness that the car had previously overturned was not the only predicate on which he might be required to testify as to its condition after this report accident, and whether or not the dents had been made at that time. It was competent to cross examine said defendant as to this regardless of whether he had seen the car when it did overturn or not. It was permissible for the State to cross examine him upon any circumstance which would have tended to rebut or contradict his contention that deceased was the aggressor. If the State could, upon this cross examination, have developed that the dents were present upon the car prior to this time, but after another accident, then such proof would have tended to discredit the defendant's testimony on this vital point. It is our view that the cross examination was proper, and that the answers of the witness were not violative of the "Hearsay Rule."

The following authorities are analogous and illustrate the principle upon which this proof must be held admissible in the form presented: Windham v. State, 219 Ala. 504, 122 So. 805; Graham v. State, 153 Ala. 38, 41, 45 So. 580; Pace v. Louisville & N. R. Co., 166 Ala. 519 (Syl. 11), 52 So. 52; Pettus v. Louisville & N. R. Co., 214 Ala. 187 (Syl. 10), 106 So. 807; Moore v. State, 30 Ala.App. 552, 9 So.2d 146(3); Tillery v. Gulf Refining Co., 220 Ala. 577(2), 126 So. 872; 70 C.J., p. 87, Sec. 113. See also 32 C.J.S., Evidence, p. 454, § 600.

■ Likewise we are unable to accord with counsel's view that Cliff Early should have been allowed to testify that his brother, Nath, was prevented from going back to work "due to his physical condition." Aside from being immaterial, such testimony from a lay, non-expert witness has always been denounced as an illegal and unauthorized conclusion.

■ Nor can we accede to the insistence that there was error in the rulings of the court in forbidding the cross examination of State's witness Wilson as to how many people came up there to see him that day; nor in refusing to allow State's witness Green, upon cross examination, to state what he went over to see Wilson about. Not only would such proof have been irrelevant to the issues in the case, but the court is always vested with considerable discretion in controlling the scope of the cross examination of witnesses (West's Alabama Digest, Vol. 19, Witnesses, ☞267) and here, in our opinion, it was soundly exercised.

■ The final plea for a reversal stresses the fact that Elbert Early, an old man and crippled, had come to the scene in order to save Nath, "small and sickly", from further harm; that McDaniel, obviously overbearing and powerful physically, had then turned the assault upon the two appellants, thus forcing the necessity to shoot. Concededly, this argument might enlist a sympathetic ear before another tribunal. Our jurisdiction, however, being appellate only, is to review the trial court's rulings upon the law. This we have done and can find no error. The jury and jury alone was the functionary to decide the issue of fact as to whether or not the shooting was justified. Having so decided, against the appellants, and the verdict having been justified under certain tendencies of the evidence, that adjudication must be order affirmed.

Affirmed.